IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSE LUIS MAGANA,

    Plaintiff,                  No. CIV S-03-2061 DFL KJM P

    vs.

SACRAMENTO COUNTY
MAIN JAIL,

    Defendants.             FINDINGS & RECOMMENDATIONS
_____/

        Plaintiff is a former county jail inmate proceeding pro se with a civil rights action under 42 U.S.C. § 1983. In his verified amended complaint, plaintiff alleges that defendants Ilaga and Weidman, acting on orders of defendants Ackerman and Iwasa, took plaintiff's "medical prescribed supporting shoes." He alleges these actions were taken in response to a jail policy, which requires an inmate to get a "court order" for orthopedic shoes. Amended Complaint (Am. Compl.) at 4-5.

        Defendants[1] have filed a motion for summary judgment and objections to the declaration of Jonathan Webb, which plaintiff has submitted in opposition to the motion.

---

[1] The motion is filed on behalf of defendants Ilaga, Weidman, Ackerman, Iwasa, Sacramento County Main Jail and the County of Sacramento. Neither the jail nor the county were ordered served and they are not defendants in this case. See Order of 4/21/04 (docket # 13).

I. <u>Summary Judgment Standards</u>

Summary judgment is appropriate when the moving party demonstrates there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" <u>Id.</u> Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>See id.</u> at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id.</u> In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." <u>Id.</u> at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. <u>See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. <u>See</u> Fed. R. Civ. P. 56(e); <u>Matsushita</u>, 475 U.S. at 586 n.11. The opposing party

1  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome
2  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
3  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.
4  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could
5  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,
6  1436 (9th Cir. 1987).

7     In the endeavor to establish the existence of a factual dispute, the opposing party
8  need not establish a material issue of fact conclusively in its favor. It is sufficient that "the
9  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
10 versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary
11 judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a
12 genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory
13 committee's note on 1963 amendments).

14    In resolving the summary judgment motion, the court examines the pleadings,
15 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
16 any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson,
17 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the
18 court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587.
19 Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
20 produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen
21 Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.
22 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
23 show that there is some metaphysical doubt as to the material facts . . . . Where the record taken
24 as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
25 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).
26 /////

On May 25, 2004, the court advised plaintiff of the requirements for opposing a motion under Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

II. Facts

Plaintiff arrived at Sacramento County Jail on February 26, 2002. Deposition of Jose Luis Magana (Magana Depo.) at 9-10. In August 2002, he was assaulted by other inmates, who kicked his right ankle. Id. at 11-12; MSJ, Declaration of Sandra Hand, M.D. (Hand Decl.) ¶ 6.[2] Medical personnel determined that no bones were broken, but that his ankle had been badly sprained. Magana Depo. at 13. Later x-rays showed an ossicle, or small piece of bone, at the tip of the fibula. Hand Decl., ¶ 6; Magana Depo. at 14. Plaintiff eventually was given an elastic ankle support, which he wears all the time to support the ankle and ease the pain. Magana Depo. at 15, 39.

Plaintiff's ankle remained swollen and so on December 20, 2002, he saw an outside orthopedist, Dr. Cosca, who prescribed ankle exercises and wrote that "supportive shoes would be helpful." Hand Decl. ¶ 8 & Attached 12/20/02 Consultation Report; Magana Depo. at 15. On February 11, 2003, plaintiff saw the jail nursing staff and reported: "ortho. doctor suggested he wear his own shoes–would be helpful. MDSC for request of own shoes–will be able to get family to bring in Velcro-closure shoes." On February 13, 2003, Dr. Mabeus notes "orthopedist recommended supportive shoes for his right ankle. I will give him a chrono[3] for

---

[2] Plaintiff's medical records are attached to Dr. Hand's declaration, but are not paginated or otherwise identified by attachment number, which makes it difficult to refer to them. Indeed, Dr. Hand draws conclusions from them without identifying the specific records relied upon, which makes the court's task in reviewing them more burdensome than is necessary. See generally Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1029-31 (9th Cir. 2001) (any evidence a party wants the court to consider for a specific purpose should be brought to the attention of the court). When reference to the records is necessary, the court will describe the document, with reference to title or content and date.

[3] If a jail inmate needs medical items, he must have a "chrono" authorizing them. Magana Depo. at 18.

own shoes if they pass scrutiny of security people." Hand Decl., Attached Medical Record Treatment Sheet.

Plaintiff's family brought him supportive-type shoes, which he was able to wear for six months. Magana Depo. at 18-19.

In July 2003, plaintiff returned to Sacramento County Jail from Yolo County Jail, wearing his supportive shoes. On July 10, 2003, plaintiff told Dr. Mabeus that "'he needs a chrono for his own shoes. When he was here before he had it.'" Dr. Mabeus wrote "I checked and, indeed, it was recommended by the orthopedic consultant." Hand Decl., Attached Medical Record Treatment Sheet. Dr. Mabeus gave plaintiff a chrono: "may have own supportive type shoes if approved by security (recommended by orthopedic consultant) x length of stay." The physician's orders for that date notes "lay in for own shoes if approved by security x length of stay." Hand Decl., ¶ 9, Attached 7/10/03 "Miscellaneous Medical Needs" form & 7/10/03 Physician's Orders.

Plaintiff returned to the doctor, who wrote a chrono for supportive shoes if they were approved by security. Around August 10, 2003, however, defendants Ilaga and Wiedman took plaintiff's shoes as directed by Sergeant Ackerman and Captain Iwasa. Magana Depo. at 4, 21. He was then given standard jail shoes. Magana Depo. at 21-22. Ilaga and Wiedman told plaintiff he needed a court order for the shoes, even if they were medically necessary. Magana Depo. at 22-23.

Mark Iwasa became jail commander in June 2003. Before that time, inmates were occasionally allowed to wear their own shoes even if this was not medically necessary or prescribed. MSJ, Declaration of Mark Iwasa (Iwasa Decl.) ¶ 5. Iwasa changed the policy in August 2003, because contraband was being smuggled in through street shoes; under the new policy, an inmate must wear jail-issued shoes unless medical necessity or a prescription requires otherwise. Id. ¶ 6. When a medical professional deems other types of shoes medically necessary,

/////

the jail will provide or allow them.  Id. ¶ 7.  The policy does not require an inmate to obtain a court order for special shoes regardless of medical necessity or prescription.  Id. ¶ 8.

III. Evidentiary Issues

        A.  Medical Records

In his opposition, plaintiff takes issue with defendants' reliance on his medical records, claiming that the use of these records violates the California Penal Code.  Opposition (Opp'n) at 4.  However, in this federal civil rights action, state law does not control.  Green v. Baca, 226 F.R.D. 624, 643-44 (C.D. Cal. 2005).  Moreover, even if state law controlled, plaintiff could not complain, for "there is no privilege as to a communication relevant to an issue concerning the condition of the patient if such issue has been tendered by . . . the patient."  Cal. Evid. Code § 996 (a); see also Docket Nos. 12 & 43 (plaintiff sought copies of the records from defendants and in making those requests, waived the physician-patient privilege).

        B. Expert Opinion

On August 8, 2006, plaintiff submitted the declaration of Jonathan Webb, a former Navy medical corpsman, who supervised medical records at a naval clinc, read charts and carried out doctors' orders.  Declaration of Jonathan Webb (Webb Decl.) ¶ 2.  Webb has reviewed the portions of plaintiff's jail medical records concerning his shoes and concludes that Dr. Mabeus entered an order for plaintiff to use his own supportive shoes.  Id. ¶¶ 4-7.

Defendants object to the declaration because it is not timely filed and because Webb is not an appropriate expert.

Defendants' motion for summary judgment was filed on May 26, 2006; under Local Rule 78-230(m), the opposition was due June 16, 2006.  Plaintiff filed his opposition on July 10, 2006, without the Webb declaration.  When he filed the Webb declaration, he filed a notice suggesting that the declaration was filed late because he had only recently received plaintiff's motion for summary judgment as the result of mail problems at the institution.  This excuse rings hollow in light of the fact that plaintiff was able to file his opposition on July 10.

6

In any event, the court has its doubts about Webb's qualifications as an expert witness and therefore will not consider his conclusions. The court also will not consider Dr. Hand's conclusion that Dr. Mabeus's notes did not amount to a prescription or a finding of medical necessity for supportive shoes. Although the court does not question her expertise – she has been the Medical Director for Sacramento County adult facilities since 2001 and is familiar with the jail's record-keeping practices -- she does not claim to be an expert in interpreting medical records and orders.

Neither Webb's nor Hand's conclusion assists the court. See United States v. Rahm, 993 F.2d 1405, 1413 (9th Cir. 1993) (expert testimony not admissible if it does not assist the trier of fact); see also LuMetta v. U.S. Robotics, 824 F.2d 768, 771 (9th Cir. 1987) (expert testimony properly excluded when witness had limited experience with finders' fees and small companies).

IV.  Analysis

In Estelle v. Gamble, 429 U.S. 97, 106 (1976), the Supreme Court held that inadequate medical care did not constitute cruel and unusual punishment cognizable under section 1983 unless the mistreatment rose to the level of "deliberate indifference to serious medical needs.

> In the Ninth Circuit, the test for deliberate indifference consists of two parts. First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain." Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. This second prong-defendant's response to the need was deliberately indifferent-is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.

Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations & quotations omitted); see

/////

1  also McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992), overruled in part on other
2  grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997).[4]

3        There is no Eighth Amendment violation if any delay in treatment is not harmful.
4  Shapely v. Nevada Bd. Of State Prison Com'rs., 766 F.2d 404, 407 (9th Cir. 1985). However,
5  unnecessary continuation of pain may constitute the "harm" necessary to establish an Eighth
6  Amendment violation from delay in providing medical care. McGuckin, 974 F.2d at 1062.

7        A showing of merely inadvertent or even negligent medical care is not enough to
8  establish a constitutional violation. Estelle, 429 U.S. at 105-06; Frost v. Agnos, 152 F.3d 1124,
9  1130 (9th Cir.1998). A difference of opinion about the proper course of treatment is not
10 deliberate indifference nor does a dispute between a prisoner and prison officials over the
11 necessity for or extent of medical treatment amount to a constitutional violation. See, e.g.,
12 Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th
13 Cir. 1989).

14       A medical need is serious if failure to treat the condition could cause further
15 significant injury or the unnecessary and wanton infliction of pain. McGuckin, 974 F.2d at 1059.

> The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a "serious" need for medical treatment.

19 Id. at 1059-60.

20       Defendants do not dispute that plaintiff's problems with his ankle constituted a
21 serious medical need. See Hemmings v. Gorczyk, 134 F.3d 104, 106-09 (2d Cir. 1998). They
22 argue, however, that jail personnel did not ignore Dr. Mabeus's order for supportive shoes
23 because the order was conditioned on the shoes being approved by security.

---

[4] Plaintiff was a pretrial detainee during the events described in the complaint. Although his right to be free from punishment flows from the due process clause, courts use Eighth Amendment language and principles when evaluating medical care claims brought by pretrial detainees. Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1187 (9th Cir. 2002).

Dr. Mabeus's chrono was not a model of clarity. It noted that supportive shoes had been recommended by the orthopedist and that plaintiff may (not must or should) be allowed to have them. Moreover, the remarks about the shoes were qualified by "if approved by security," and could be read to mean that the specific pair of shoes would have to pass inspection or that a request for non-medically necessary shoes should be honored if security personnel thought it appropriate. Given this ambiguity, the court cannot find that defendants "deliberately ignore[d] the express orders" of plaintiff's doctor to the extent that they relied on the wording of the chrono. Jett, 439 F.3d at 1097; White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990). Accordingly, the court cannot find that defendants were deliberately indifferent to plaintiff's ankle problems for interpreting the chrono as a recommendation rather than an order that he be given supportive shoes.

Plaintiff does allege in his verified complaint that Ilaga and Weidman informed plaintiff that the new policy at the jail was that he needed a court order for the shoes, even if the shoes were medically necessary. Am. Compl. at 5. Iwasa denies that there was such a policy. Iwasa Decl. ¶ 8. If such a policy existed, it would raise constitutional concerns. Ancata v. Prison Health Services, Inc., 769 F.2d 700 (11th Cir. 1985).

Ultimately, however, this disputed issue of fact is not material. As the Eleventh Circuit has recognized:

> [I]f [the jail commander] himself established or utilized a policy or custom requiring that inmates seek court orders to obtain medical services, then he would be liable if the result of that policy or custom played a role in any deliberate indifference to [an inmate's] medical needs.

Id. at 706; see also Arnold v. International Business Machines, Corp. 637 F.2d 1350, 1355 (9th Cir. 1981) (causation is element of § 1983 action). In this case, because of the ambiguity in the chrono, plaintiff cannot show deliberate indifference on the part of the defendants in confiscating his shoes and so cannot show that the alleged policy played a role in any violation of his rights.

/////

IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 30, 2007.

_____
U.S. MAGISTRATE JUDGE

2

maga2061.57x2